IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**PHYLLIS (WASHINGTON) BELL**                                               **PLAINTIFF**

VS.                                                              CAUSE NO.  3:20-cv-114-TSL-RHW

**T-FAL CORPORATION, GROUPE
SEB USA, INC., QVC, INC., and
EMERIL LAGASSE**                                                **DEFENDANTS**

---

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

---

COMES NOW the Plaintiff, PHYLLIS (WASHINGTON) BELL, by and through undersigned counsel, and hereby files this her Complaint against the Defendants, T-FAL CORPORATION, GROUPE SEB USA, INC., QVC, INC., and EMERIL LAGASSE, and in support of such Complaint, would show unto the Court the following:

**PARTIES, JURISDICTION AND VENUE**

1.  Plaintiff, Phyllis (Washington) Bell (hereinafter "Plaintiff" or "Bell"), is an adult resident citizen of Hinds County, Mississippi.

2.  Defendant T-Fal Corporation. ("T-FAL" or "Defendant T-FAL"), is a foreign corporation, incorporated under the laws of the State of New Jersey, principally located in Millville, New Jersey, and doing business in all fifty states, including Mississippi.  At all times relevant, Defendant T-FAL substantially participated in the design and manufacture, promotion, sale and distribution of the subject pressure cooker (hereinafter "Pressure Cooker") which caused

Plaintiff's injuries and damages. At all times relevant, Defendant T-FAL promoted, via television, internet and otherwise, the Pressure Cooker to be sold in all fifty states, including Mississippi.

3. Defendant Groupe SEB USA, Inc. ("Groupe" or "Defendant Groupe"), is a foreign corporation, incorporated under the laws of the State of New Jersey, principally located in Parsippany-Troy Hills, New Jersey, and doing business in all fifty states, including Mississippi. At all times relevant, Defendant Groupe substantially participated in the design and manufacture, promotion, sale and distribution of the subject pressure cooker (hereinafter "Pressure Cooker") which caused Plaintiff's injuries and damages. At all times relevant, Defendant Groupe promoted, via television, internet and otherwise, the Pressure Cooker to be sold in all fifty states, including Mississippi.

4. Defendant QVC, Inc. ("QVC" or "Defendant QVC"), is a foreign corporation, incorporated under the laws of the State of Pennsylvania, principally located in West Chester, Pennsylvania, and doing business in all fifty states, including Mississippi. At all times relevant, Defendant QVC substantially participated in the marketing, advertising, promotion, sales and distribution of the subject pressure cooker (hereinafter "Pressure Cooker") which caused Plaintiff's injuries and damages. At all times relevant, Defendant QVC promoted, via television, internet and otherwise, the Pressure Cooker to be sold in all fifty states, including Mississippi.

5. Emeril Lagasse ("Emeril" or "Defendant Emeril"), is an individual who resides in Florida and has a place of business at 829 St. Charles Ave., New Orleans, Louisiana 70130. Defendant Emeril has businesses that are incorporated under the laws of the State of Louisiana, principally located in New Orleans, Louisiana, and does business in all fifty states, including Mississippi. At all times relevant, Defendant Emeril substantially participated in the design,

development, marketing, advertising, promotion, sales and distribution of the subject pressure cooker (hereinafter "Pressure Cooker") which caused Plaintiff's injuries and damages. At all times relevant, Defendant Emeril promoted, via television, internet and otherwise, the Pressure Cooker to be sold in all fifty states, including Mississippi.

6. Defendant T-FAL, Defendant Groupe, Defendant QVC and Defendant Emeril will be collectively referred to herein as "Defendants".

7. Jurisdiction is proper in the Court pursuant to 28 U.S.C. § 1332(a), because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000, excluding interests and costs.

8. Venue is proper in this Court as a substantial part of the events, acts or omissions giving rise to the claim and Plaintiff's injuries occurred within this District and the Defendants regularly conduct business in this District, including the promotion, sale and distribution of the pressure cookers, among other consumer goods, in this District.

## FACTS

9. Defendants directly advertised and promoted for sale its "Emeril by T-FAL" electric pressure cooker to users and consumers across the country, specifically including the Plaintiff in Jackson, Mississippi.

10. Having viewed Defendants' advertisements and reasonably relying upon Defendants' representations and warranties regarding the safety and ease of use of Defendants' Pressure Cooker, Plaintiff's sister placed an order with QVC to purchase the product (hereinafter "Pressure Cooker") in or around December of 2014.

11. Following Defendants' delivery of the Pressure Cooker to Plaintiff's sister,

Plaintiff received the Pressure Cooker as a gift in Jackson, Mississippi. Thereafter, she reviewed the instruction manual and viewed numerous videos, infomercials and advertisements produced by Defendants, featuring Defendant Emeril.

12.   In Defendants' videos, infomercials and advertisements, Defendants, through their agent Defendants, represented and warranted to users and consumers across the country, and specifically to the Plaintiff in Mississippi, that:

(a) "There are a lot of pressure cookers out there, folks. But most of those pressure cookers want to be this pressure cooker. And the reason is the is just the technology, the brain. It's very simple. The safety features of this thing…"

(b) "First of all, we would not be able to open this if it was not depressurized. That's one of the safety features."

(c) "It will not allow you to open the lid until the pressure comes down."

(d) "What's important for you and I is the factor of safety; this has two major safety features. You cannot open this machine without it being depressurized."

(e) "First of all, this is very easy to use…you have directions, you may not ever have to read them."

(f) "It's endless what you can do [with the Pressure Cooker]"

(g) "Easy & convenient"

(h) "Has two safety mechanisms"

(i) "The brain does all the work for you."

(j) "You cannot open this. So, this is another child feature. I have children. You cannot open this until you depressurize it… Once it's depressurized, okay. Now it opens."

(k) "It will not open until it's depressurized."

(l) "This is a safe, digital and electric pressure cooker that will leave you wondering why you didn't get involved with it sooner." "The brain does all the work…There's two features on here that are safety. So you don't have to worry about the kids. You cannot unlock this machine unless it's depressurized. So the worries of your children going up to it, or your husband for that matter, going up to and trying to unlock the lid is not gonna happen. Because the way this technology is, the arrows have to match and line up for

this thing to go."

(m) "How simple is this? The safety device, arrow to arrow. You gonna line it up, okay? It will click right on, so you know it's locked. And that way no pressure is going to escape until you want it to."

(n) "A lot of pressure cookers want to be this pressure cooker. Of course, the quality of this, the safety factors of this."

(o) "So, listen, if this was under pressure, you wouldn't be able to open this. That is one of the safety features. Because grandma's old-fashioned pressure cooker would sometimes randomly blow up. And there were a lot of dangers with that. But we used them anyways all these years because the food tastes so good. But now they're safe."

(p) "The quality of the craftsman ship is just that. First of all, it has these built-in safety. I never have to worry about the kids with the built-in safety factors they have. This is not like the old-school pressure cookers…"

(q) "If the pressure was not released, OK, you would not be able to open this".

(r) "Super easy to use."

(s) "There's safety all over, written all over it. You line up the dots basically. You can't open the machine unless you depressurize it."

(t) "You would not be able to depressurize this if this was not lined up properly. You would not be able to open the machine unless it was depressurized. So you don't have to worry."

13. Plaintiff reasonably relied on Defendants' express warranties and representations regarding the Pressure Cooker.

14. Moreover, following receipt of Defendants' Pressure Cooker, she viewed Defendant Emeril's demonstrations where Defendant Emeril never instructs, demonstrates or shows how to release the steam and confirm the pressure cooker is depressurized. Instead, Defendant Emeril repeatedly references the fact that its "brain" does all the work, that you cannot open the Pressure Cooker unless it is depressurized and is consistently shown opening the Pressure Cooker after those steps have been undertaken.

15. The subject Pressure Cooker purports to be a model "Emeril by T-FAL Pressure Cooker Serie EPC 01".

16. At all times relevant, Defendants' pressure cookers, including the subject Pressure Cooker, were manufactured in China and subsequently sold to one or more third-party vendors for resale and delivery to Defendants in the United States.

17. Prior to delivering the subject Pressure Cooker to the Plaintiff, Defendants exercised substantial control over the engineering, design, safety, manufacturing, testing, and quality assurance of their pressure cookers, including the subject Pressure Cooker. Defendants were solely responsible for approving all design changes to its pressure cookers, including the subject Pressure Cooker, and periodically made such engineering design changes to its pressure cookers, including the subject Pressure Cooker, prior to its delivery to the Plaintiff.

18. Prior to delivering the subject Pressure Cooker to the Plaintiff, Defendants were responsible for the content of its promotional and marketing materials, including those viewed by the Plaintiff, and were responsible for the content of the materials accompanying its pressure cookers, including the instructions and warnings contained in the advertisements, infomercials, promotional videos, instruction manual, recipe guides, and on-product labeling.

19. Defendants represented and warranted to users and consumers, including the Plaintiff, that its pressure cookers, including the subject Pressure Cooker, are designed with "technology", "the brain" that make it so "you cannot open this machine without it being depressurized."

20. According to the Defendants' marketing and promotional materials, including those referenced herein (i.e. informercial and YouTube), as well as its instruction manual accompanying the product, Defendants' pressure cookers, including the subject Pressure Cooker,

is "easy and convenient" and the pressure cooker "most of those pressure cookers want to be… And the reason is the is just the technology, the brain. It's very simple.  The safety features of this thing."

21.     According to the Defendants, their pressure cookers, including the subject Pressure Cooker, are designed with a number of safety features, including, but not limited to a "double safety lock in the lid", "safety lock in the lid", "one-touch steam release"  and other safety features that prevent the lid from opening when the Pressure Cooker is pressurized.

22.     Defendants' pressure cooker, including the subject Pressure Cooker, includes a "CAUTION" sticker affixed to the product.  The label fails to include a diagram of any kind regarding use or in relation to the "Caution".  The label states, "When the cooking is finished, gently turn the pressure limit valve to let the steam out quickly.  Only open the lid when the float valve is in the low position."   However, neither the label nor the instruction manual accompanying the Pressure Cooker include a diagram, description, or any other means of identifying the proper position of the "float valve" when the pressure cooker is safe to be opened versus when it is unsafe due to remaining pressure.

23.     Prior to February 28, 2017, Plaintiff read Defendants' instruction manual accompanying the subject Pressure Cooker, which included Defendants' above-quoted representations regarding the subject Pressure Cooker's alleged safety features.

24.     Prior to February 28, 2017, Plaintiff read Defendants' on-product labeling.

25.     Prior to February 28, 2017, Plaintiff operated without incident the subject Pressure Cooker according to Defendants' instructions for use and express warranties and representations.

26.     On or about February 28, 2017, Plaintiff endeavored to prepare food for her

family at her home in Jackson, Mississippi, and decided to use the Pressure Cooker, among other things, for that purpose. Relying upon Defendants' warranties and factual representations and regarding the subject Pressure Cooker, Plaintiff reasonably believed the Pressure Cooker was incapable of pressurizing without its lid being placed in a locked position and that the lid could not come off if pressure remained inside the product. Accordingly, Plaintiff used the subject Pressure Cooker to prepare food items in a manner intended and directed by Defendants. Despite operating the subject Pressure Cooker as intended and directed by Defendants, the heated contents of the subject Pressure Cooker suddenly and without warning exploded onto the Plaintiff's person as she attempted to remove the lid. As a result of the incident, Plaintiff was caused to suffer severe, painful burns which necessitated medical treatment. As a further result of the incident, Plaintiff suffered and continues to endure permanent scarring, disfigurement and skin discoloration, among other injuries and damages.

27. Unbeknownst to the Plaintiff at the time of her injury incident, upon information and belief, Defendants had previously received (and was contemporaneously receiving) reports of personal injury and/or property damage resulting from similar incidences of Defendants' pressure cooker lids or the heated contents inside exploding from the product during normal, foreseeable, and intended use.

28. Unbeknownst to the Plaintiff at the time of her incident, upon information and belief, Defendants had previously and were actively and substantially engaged with, supervising over, and participating with the manufacturers of their pressure cookers to make a number of design changes to the product, including adding safety devices to the product to prevent the product from achieving pressure unless and until the lid was locked and a pressure gauge to indicate when the product's lid was safe to be opened.

29. Unbeknownst to the Plaintiff at the time of her use of her injury incident, upon information and belief, Defendants had previously learned that their warnings and instructions for use, including those contained within the instruction manual accompanying the subject Pressure Cooker and those affixed to the product itself, were insufficient and failed to comply with applicable standards.

30. Despite Defendants' knowledge of the defective condition of the Subject Pressure Cooker at the time it left Defendants' control, Defendants failed take any corrective action to prevent further harm, including the Plaintiff's harm, but instead continued represent and warrant the product to be safe to increase Defendants' sales and profits.

## CAUSES OF ACTION
### VIOLATIONS OF MISSISSIPPI PRODUCT LIABILITY ACT (MPLA)
### MISSISSIPPI CODE § 11-1-63

31. Plaintiff adopts and avers each and every paragraph as if fully set out herein.

32. At all times relevant and material, Defendants advertised, marketed, promoted for sale and sold the subject Pressure Cooker to and for use by ordinary users and consumers, including Plaintiff.

33. At all times relevant and material, Defendants were not merely a conduit or innocent seller of the Pressure Cooker, but instead exercised substantial control over the aspects of design, testing, manufacturing, safety, quality assurance, packaging and/or labeling of the Pressure Cooker that caused Plaintiff's harm and possessed actual or constructive knowledge of the defective condition of the Pressure Cooker at the time Defendants sold the product.

34. At the time the subject Pressure Cooker left Defendants' control, the subject Pressure Cooker was defective because:

    (a) It deviated in a material way from the manufacturer's specifications or

        from otherwise identical units manufactured to the same manufacturing specifications;

(b)    It failed to contain adequate warnings or instructions;

(c)    It was designed in a defective manner;

(d)    It was designed and/or manufactured in a manner to allow opening under pressure;

(e)    It was designed and/or manufactured with inadequate lid-locking safety mechanisms to prevent the lid from opening under pressure;

(f)    It was designed and/or manufactured with inadequate technology and controls to accurately notify consumers if and when pressure was inside the pressure cooker; and/or

(g)    It breached express warranties and/or failed to conform to other express factual representations upon which Plaintiff justifiably relied in electing to use the product.

35.    The Pressure Cooker's defective condition rendered the product unreasonably dangerous to the user, the Plaintiff, and the defective condition of the Pressure Cooker proximately caused the damages alleged herein for which recovery is sought.

36.    The Pressure Cooker's defects could have been eliminated without substantially compromising the product's usefulness or desirability and are not recognizable by ordinary persons with ordinary knowledge common to the community, such as the Plaintiff.

37.    At the time the Pressure Cooker left Defendants' control, Defendants knew or, in light of reasonably available knowledge should have known, that its pressure cookers, including the subject Pressure Cooker, were capable of, indeed could, and indeed were pressurizing absent complete lid locking and were capable of, indeed could, and indeed were being opened under pressure, and that ordinary users or consumers, such as the Plaintiff, would not realize these dangerous conditions.

38. The Pressure Cooker's warnings and instructions failed to provide sufficient information concerning the dangers and safe use of the product, and failed to account for the characteristics of, and the ordinary knowledge common to an ordinary consumer or purchaser, such as the Plaintiff. Defendants failed to provide warnings that a reasonably prudent seller in the same or similar circumstances would have and should have been provided. Thus, the warnings and instructions were inadequate and less than what a reasonably prudent seller in the same or similar circumstances would have and should have provided.

39. In light of Defendants' contrary express warranties and factual representations regarding the safety of the Pressure Cooker, including but not limited to, that the Pressure Cooker would not pressurize without its lid being closed and that the lid cannot be removed unless the Pressure Cooker was depressurized, the Pressure Cooker's warnings were inaccurate, misleading, rendered meaningless, and thus were defective.

40. Equally inaccurate, misleading, meaningless, and thus defective, is the label affixed to the subject Pressure Cooker, which fails to provide a diagram or proper instructions for the user regarding the "pressure limit valve" and "float valve". Neither the label nor the instruction manual accompanying the Pressure Cooker include a diagram, description, or any other means of identifying the proper position of the "float valve" when the pressure cooker is safe to be opened versus when it is unsafe due to remaining pressure. Likewise, neither the label nor the instruction manual accompanying the Pressure Cooker include a diagram, description, or any other means of identifying when the "float valve" is a position where it is unsafe to open the unit. Moreover, this information is not readily apparent to an ordinary user or consumer such as the Plaintiff.

41. The defective nature of Defendants' Pressure Cooker was not open and obvious,

and thus the Plaintiff did not know or in the exercise of reasonable diligence could not have discovered the subject Pressure Cooker was defective and that use of the Pressure Cooker was inconsistent with her safety. Consequently, the Plaintiff was unable to appreciate the dangerous condition of the Pressure Cooker at the time of her use.

42. At the time the Pressure Cooker left the Defendants' control, Defendants knew or should have known:

    (a) The Pressure Cooker's defective condition was likely to cause, indeed had caused, and was actively causing severe and permanent injuries to users and consumers; and/or

    (b) The Pressure Cooker was likely to, indeed had failed, and was actively failing to function as expected and there existed one or more feasible alternative design alternatives, any one of which would have, to a reasonable probability, prevented Plaintiff's injuries and damages without impairing the utility, usefulness, practicality or desirability to users or consumers.

43. As a direct and proximate cause of Defendants' violations of the MPLA, Plaintiff was caused to suffer at least the following injuries and damages:

    (a) She was caused to suffer physical pain and mental anguish;

    (b) She was caused to seek medical treatment and was prevented from going about her normal activities;

    (c) She was permanently injured and disfigured;

    (d) She was caused to incur medical expenses to treat and cure her injuries;

    (e) She was caused to suffer mental anguish and emotional distress; and

    (f) She was caused to be injured and damaged, all to her detriment.

## FRAUD

44. Plaintiff adopts and avers each and every paragraph as if fully set out herein.

45. At all times relevant, Defendants represented and stated to the Plaintiff via

infomercials, YouTube videos, and its instruction manual that the subject Pressure Cooker was designed and equipped with safety features to prevent the product from achieving pressurization unless and until the product's lid was locked and to prevent the product's lid from being removed unless and until the product was completely depressurized.

46.     At the time Defendants made such representations and statements, which were important and statements of material fact, to the Plaintiff, Defendants knew or should have known that its representations and statements were false.

47.     At the time Defendants made such representations and statements of material fact to the Plaintiff, Defendants intended for consumers, specifically including the Plaintiff, to rely upon its representations and statements in choosing to purchase the product.

48.     Plaintiff reasonably and rightly relied upon Defendants' representations and statements of material fact in choosing to use Defendants' Pressure Cooker.

49.     Plaintiff did not know, nor could she have discovered through reasonable diligence, that Defendants' representations and statements were false.

50.     As a direct and proximate result of her reliance on Defendants' representations and statements, Plaintiff was caused to suffer injuries and damages.

**NEGLIGENCE**

51.     Plaintiff adopts and and avers each and every paragraph as if fully set out herein.

52.     At all times Defendants possessed a duty of ordinary care in the production, sale, research, and marketing of its Pressure Cooker. Defendants breached their duties and were negligent in failing to do what a reasonable and prudent producer, developer, and marketer would have done under these circumstances with regard to its Pressure Cooker.

53. Defendants were negligent in the following particulars, including but not limited to:

(a) failing to properly test and develop its product;

(b) failing to provide proper and full warnings and instructions for its product;

(c) failing to notify the general public in a timely and efficient manner of the defects relating to its product;

(d) placing a defective product in the stream of commerce; and

(e) other acts of negligence as will be more fully shown at trial.

The above acts constitute common law negligence and negligence per se and were each a proximate cause of the occurrence in question. Further, the Defendants' act(s) and/or omission(s) caused the Plaintiff's damages.

54. The act(s) and/or omission(s) of the Defendants constitute common law negligence and negligence per se and were each a proximate cause of the occurrence in question. Further, the act(s) and/or omission(s) of the Defendants resulted in the Plaintiffs' losses and damages.

WHEREFORE, the Plaintiff, Phyllis (Washington) Bell, requests a trial by jury and judgment against the Defendants, named and fictitious, in a sum to be determined by a jury, plus costs and attorney's fees. Plaintiff further prays for all other relief, of either a legal or equitable nature, to which she may be justly entitled.

Respectfully submitted by:

/s/ Dennis Sweet
Dennis Sweet, III
*Attorney for Plaintiff*

Dennis C. Sweet, III (MSB #8105)
Sweet & Associates
158 E. Pascagoula Street
Jackson, MS 39201
T: (601) 965-8700
F: (601) 965-8719